UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DIAMOND BEACH, VP, L.P.; aka | § | |
| DIAMOND BEACH CONDOS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. G-10-27 |
| | § | |
| LEXINGTON INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

### **I.    INTRODUCTION**

Before the Court are the plaintiff Diamond Beach VP, L.P. a/k/a Diamond Beach Condos, G.T., Leach Builders, LLC, G.T. Leach Construction Builders, LLC and G.T Leach Construction Builder, LLC's ("Diamond") motion for partial summary judgment (Doc. No. 14) and the defendant, Lexington Insurance Company's ("Lexington") response (Doc. No. 16). Concurrent with Diamond filing its motion for partial summary judgment, Lexington filed its motion for summary judgment (Doc. No. 13) and Diamond has, in turn, filed its response (Doc. No. 15) to Lexington's motion for summary judgment. After a careful review of the motions, responses, pleadings and arguments on file, the Court determines that Diamond's motion for partial summary judgment should be denied and Lexington's motion for summary judgment should be granted.

### **II.    FACTUAL BACKGROUND**

The parties have entered into and caused to be filed a "Statement of Stipulated Facts" which the Court incorporates with limited editing:

1.    Lexington Insurance Company ("Lexington") issued a builders risk policy,

policy number 8756730, to G.T. Leach Construction Builders LLC and Diamond Beach Condos for the period of January 31, 2008 to October 15, 2009 (the "Lexington Policy"). A complete and accurate copy of the Lexington Policy is annexed hereto as Exhibit A.

2. Diamond Beach VP, L.P. a/k/a Diamond Beach Condos ("Diamond Beach") is the Developer and G.T. Leach Builders, LLC, G.T. Leach Construction Builders, LLC, and G.T. Leach Construction Builder LLC (collectively, "G.T. Leach") are the general contractor for the construction project located at the intersection of FM 3005 and Seawall Boulevard, Galveston, Texas (the "Subject Location"). Diamond Beach and G.T. Leach are collectively referred to hereinafter as Plaintiffs.

3. The Subject Location was under construction when Hurrican Ike made landfall in Texas on or about September 13, 2008.

4. The Subject Location sustained various degrees of physical damage on September 13, 2008, as a result of Hurricane Ike.

5. Plaintiffs incurred certain expenses to physically repair and replace property at the Subject Location that was damaged as a result of flooding from Hurricane Ike (hereinafter, "Hard Costs"). Plaintiff submitted a claim under the Lexington Policy for those Hard Costs (hereinafter, the "Hard Cost Claim").

6. After application of the Lexington Policy's deductible, the total negotiated amount of Plaintiffs' Hard Cost Claim was $385,281.11. Lexington paid that amount in full and complete satisfaction of the Hard Cost Claim. It is undisputed that the Hard Cost Claim has been resolved between the parties and is not the subject of this litigation.

7. Immediately prior to the landfall of Hurricane Ike, the Subject Location's scheduled date of completion was May 11, 2009.

8.       Following the landfall of Hurricane Ike, the parties agreed that the construction of the Subject Location could be completed by July 1, 2009.  This 51-day delay in the construction of the Subject Location includes:

(a)   The period of time when ingress and egress from the Subject Location was prohibited as a direct result of Hurricane Ike;

(b)   The time to clean up the debris at the Subject Location following Hurricane Ike;

(c)   The time to order the materials necessary to repair the physical damage sustained at the Subject Location, and;

(d)   The time it would take, exercising due diligence and dispatch, to rebuild, repair or replace the parts of the Subject Location which had been lost or damaged to their condition immediately prior to Hurricane Ike.

9.       Plaintiffs incurred certain expenses related to the Subject Location during the delay described in paragraph 8.  Those expenses include, but are not limited to, additional taxes, interest upon money borrowed to finance the work at the Subject Location, legal and accounting fees, advertising expenses, and extra sales agent salaries.  Plaintiffs submitted a claim under the Lexington Policy for the Soft Costs it incurred during the delay described in paragraph 8.

10.      After application of the Lexington Policy's 21 day Waiting Period Deductible, the Length of Plaintiffs' Original Soft Cost Claim was 30 days.  The total negotiated amount of the Original Soft Cost Claim was $296,209.84.  Lexington paid that amount in full and complete satisfaction of the Original Soft Cost Claim.  It is undisputed that the Original Soft Cost Claim has been resolved between the parties and is not the subject of this litigation.

11. Plaintiffs submitted a "Supplemental Soft Cost Claim" that was separate from, and additional to, the Original Soft Cost Claim. The Supplement Soft Cost Claim is the only portion of Plaintiffs' claim that is the subject of this litigation.

12. The following two periods of delay form the basis of Plaintiffs' Supplemental Soft Cost Claim:

   a) <u>The delay in the start of roofing work at the Subject Location</u>. This delay was caused by manpower restraints put upon the roofing subcontractor because it was inundated with requests to perform roofing repairs to other properties throughout the Texas Gulf Coast following Hurricane Ike. Because of the repairs being performed to other properties not insured under the Lexington Policy, the roofing subcontractor was unable to start on January 26, 2009 as scheduled.

   b) <u>The delay in the completion of interior gypsum board (a.k.a. drywall) at the Subject Location</u>. Inspections of the Subject Location by the City of Galveston were necessary to close up interior partitions. For the last three months of 2008, continuing through the first 6 months of 2009, the City of Galveston Building Department, Public Works Department, and Fire Marshall's Office were overwhelmed with inspections of properties not insured under the Lexington Policy. The completion of the installation of drywall at the Subject Location was delayed because of the time lost waiting on City of Galveston inspections.

13. At the time of Hurricane Ike, the Subject Location was still in the process of erection of exterior walls and decks. No work related to roofing or drywall had commenced at the Subject Location prior to Hurricane Ike.

14. Hurricane Ike did not cause any physical loss or damage to roofing or interior gypsum at the Subject Location since no portions of the roof or interior gypsum were installed at the Subject Location at the time of Hurricane Ike.

15. Hurricane Ike also did not cause any physical loss or damage to material to be utilized for roofing and/or drywall at the Subject Location.

16. The delays alleged in Plaintiff's Supplemental Soft Cost Claim were not caused directly by any physical loss or damage sustained by the Subject Location or property located at the Subject Location.

### III.    CONTENTIONS OF THE PARTIES

Diamond states, and it is undisputed, that the Lexington policy provides coverage for supplemental soft cost claims of the nature that it submitted.  Lexington asserts, however, that the supplemental soft costs claimed by Diamond are not covered under its policy's delay in completion endorsement.

Lexington asserts that following Hurricane Ike, Lexington and Diamond reached an agreement and settled all claims related to hard and soft costs.  Soft costs included such items as interest, taxes and advertising expenses that had been "incurred during the delay in construction attributable to the repair of the physical loss and damage sustained by the construction project." Diamond's supplemental soft costs claim represents costs that Diamond incurred at its own hand. In their regard, Lexington agrees that the costs sought "were not caused by direct physical loss or damage to the Subject Location."  Instead, Lexington contends the loss was caused by damage to "other properties not insured under [its] Policy."

To this argument, Diamond concedes that the costs incurred were due to damage to other locations or properties that were not insured by Lexington.  However, Diamond argues that the

5

"damages at issue were attributable" to hurricane damage to the insured property and was "compounded by the manpower restraints and delayed inspections." Therefore, the supplemental soft cost claim is a result of the damage to the insured project.

Next, Lexington argues that Diamond cannot establish that their supplemental soft costs were caused by direct physical loss or damage to the insured project because the losses did not occur during the agreed period of indemnity. The period of indemnity, according to Lexington, was an agreed 30 day period.

Diamond contends that Lexington misreads its policy terms and particularly the definition of "Period of Indemnity." Alternatively, Diamond asserts, the definition is ambiguous and should be construed in favor of coverage. A reasonable interpretation, Diamond argues, is that the "structure must be returned to its complete pre-loss condition—including returning the subject location to its critical path of construction such that no further delays exist in completion of the project."

Finally, Lexington asserts that Diamond cannot meet its burden to show that its supplemental soft cost claim is not barred from coverage by several exclusions found in the Delay in Completion Endorsement. Lexington asserts that it is not liable where: (a) delay is increased by loss or damage to property not covered by the policy; and, (b) any change that results in deviation from the original progress, independent of the loss or damage that gives rise to delay, whether the delay occurs before or after any covered delay.

Diamond stipulates that the supplemental soft cost claim can be attributed to the fact that the roofing contractor had other roofs to repair and the city had other buildings to inspect. Because these events prevented Diamond from keeping the project on the critical path of construction, the delay was not totally attributable to damage away from the insured project but

6

also due to damage at the project.  Therefore, Diamond argues, Exclusions 4 and 10 of the policy do not apply.

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*   If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.  *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).  Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164.  To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377,

380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V.     ANALYSIS AND DISCUSSION

The facts show that the Subject Location was under construction when Hurricane Ike struck Galveston, Texas on September 13, 2008. Lexington had issued a builders risk policy, Policy number 8756730 to Diamond for the period of January 31, 2008 to October 15, 2008. Diamond was operating under a construction contract with the owner that projected a construction completion date of May 11, 2009. Hurricane Ike caused some or various degrees of physical damage primarily from flooding.

Lexington and Diamond conferred concerning damage and delay and resolved their differences under the builders risk policy such that afterward, Diamond received hard costs coverage in the amount of $385,281.11 and soft cost coverage in the amount of $296,209.84. In addition, due to Hurricane Ike, the parties agreed that the construction completion date would be extended 51 days to July 1, 2009.

The relevant portions of the Builders Risk Policy are found in the Coverage and Exclusions, Delay in Completion Endorsement-Declarations, the additional Exclusions and Limitations and Definitions sections. They read in pertinent part:

> SECTION B – COVERAGE AND EXCLUSIONS
> ***
> 4.     **PERILS EXCLUDED:**
>
> This policy shall not pay for loss or damage caused by, resulting from, contributed to or made worse by any of the following excluded perils, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical loss or damage insured by this Policy, unless excepted below:

A. Consequential loss, damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non-completion, delay in completion, or non compliance with contract conditions, however the foregoing shall not exclude Delay in Completion Coverage when it is endorsed to this Policy;

\*\*\*

The Lexington Policy's Delay in Completion Endorsement states, in pertinent part:

\*\*\*

## INSURING AGREEMENT

1. In consideration of the additional premium charged and subject to all terms, conditions, limitations and exclusions of this Endorsement and of the Policy to which this Endorsement is attached, this Policy is extended to indemnity the Insured, specified in the Delay in Completion Endorsement, for Delay In Completion Loss, as defined in this Endorsement, incurring during the Delay, and caused by direct physical loss or direct physical damage to Insured Property during the Period of Insurance, provided such loss or damage is indemnifiable under the Policy to which the Endorsement is attached or would have been indemnifiable except for application of deductible.

2. Subject to the Sublimit of Liability and the Period of Indemnity specified in the Declarations of this Endorsement and the Period of Insurance, the Company will indemnify the Insured for loss defined as **SOFT COSTS/ADDITIONAL EXPENSES\***, loss of **RENTAL INCOME\*** and/or loss of **GROSS EARNINGS\*** as scheduled in this Endorsement to the extent such loss is actually and necessarily incurred by the Insured during the DELAY.

\*\*\*

## ADDITIONAL EXCLUSIONS AND LIMITATIONS

The Company shall not be liable for any increase in **DELAY** caused by or resulting from:

\*\*\*

4. Loss or damage to property not covered by this policy;

\*\*\*

10. Any change order or other cause which results in deviation from the original

>progress schedule, or revisions thereto, and which is independent of insured loss or damage which gives rise to a **DELAY**, whether occurring prior to or after an insured **DELAY**;

**\*\*\***
**DEFINITIONS**

>**For the purpose of this endorsement, the following definitions shall apply in addition to those of the policy:**
>
>3.   **DELAY**:  shall mean the period of time between the Scheduled Date of Completion, Completion, as stated in the Declarations, and the actual date on which commercial operations or use and occupancy commenced or could have commenced, however, not exceeding such delay as would result if the loss or damage were repaired or replaced with the exercise of due diligence and dispatch, but in no event exceeding the **PERIOD OF INDEMNITY** stated in the Declarations for all Indemnifiable Occurences combined.  The Delay shall not be terminated by the expiration or cancellation of the Policy with respect to indemnity payable hereunder in direct consequence of insured loss or damage occurring prior to such expiration or cancellation.
>
> **\*\*\***
>
>5.   **PERIOD OF INDEMNITY**:  is the number of calendar days stated in the Declarations of this Endorsement which is in excess of the **WAITING PERIOD DEDUCTIBLE**.  The **PERIOD OF INDEMNITY** begins but for the **WAITING PERIOD DEDUCTIBLE**, with the date upon which, had the loss or damage not occurred, the **INSURED PROJECT** would have been completed but not prior to the **SCHEDULED DATE OF COMPLETION**.  The **PERIOD OF INDEMNITY** ends on the earlier of the date on which the **INSURED PROJECT** is completed but not exceeding the length of time it takes with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property which has been lost or damaged to its condition immediately prior to the occurrence of the loss or damage or the number of calendar days specified which is less.  The **PERIOD OF INDEMNITY** hereunder shall not be limited or otherwise affected by the expiration of the Policy.

Federal courts are obliged to construe insurance policies according to the rules of contract construction. *See Kelly-Coppedge, Inc. v. Highlands Ins.*, 980 S.W.2d 462, 464 (Tex. 1998).  In this regard, courts are to look to the terms of the policy with a view to give effect to the parties' intent as expressed in the written terms of the contract.  *See State Farm Life Ins. Co. v. Beatson*, 970 S.W.2d 430, 435 (Tex. 1995).  And, where the terms of the contract are clear and

unambiguous, those terms are to be applied even though the parties may dispute the meaning. *See Kelly-Coppedge*, 980 S.W.2d at 465.

In the case at bar, Diamond challenges the terms and definitions of the insurance policy in the areas previously set out herein. It is Diamond's position that the delay in starting repairs to the roof and in the completion of interior gypsum board at the Subject Location was due to the unavailability of the roofing subcontractor and delayed inspections by the City of Galveston.

First, Diamond argues that Lexington has failed to meet its burden to show that its supplemental soft cost claim is excluded as a "consequential loss" under the policy. *See* [Doc. No. 12, Ex. A; Section B – Coverage and Exclusions 4(A)]. The Court is of the opinion that Diamond's reasoning is flawed and *Zurich American Ins. Co. v. Keating Building Corp.*, 513 F.Supp.2d 55 (D.N.J. 2007) does not save or support its reasoning. The facts in *Zurich American* do not fit the facts here. There, a general contractor sought payment for losses that the owner suffered after an accident occurred on the construction site. The general contractor sought coverage for debris removal costs after a portion of a garage collapsed causing the death of four workers. The court held, among other things, that debris removal was covered by the policy but that the policy excluded "forensic" debris removal which was designed to investigate the cause of the collapse. *Id*. at 65. Here, the supplemental soft costs sought by Diamond are by definition consequential damages or losses and are specifically excluded by the language of the policy. "This Policy shall not pay for loss or damage caused by…delay in completion, or non compliance with contract conditions…." The exceptions of course are those permitted by the Delay in Completion coverage section of the Policy.

Delay in Completion losses are those "caused by direct physical loss or direct physical damage to [the] Insured Property…." The evidence shows that some damage was incurred by

11

the Subject Location as a result of Hurricane Ike. However, the damage was not associated with the roof or in the interior gypsum board; the basis for Diamond's supplemental claim. Moreover, the record is clear that, following the storm, the parties met and conferred and resolved their concerns about Hurricane Ike damage and the delay engendered. The claims were paid.

There is no evidence that a subsequent loss occurred at the Subject Location. The Delay in Completion provision of the Policy requires that the loss be "caused by direct physical loss or direct physical damage to [the] Insured Property." Diamond admits that the supplemental soft cost claim seeks damages that resulted from the unavailability of its roofing subcontractor and from delayed inspections, ostensibly due to the fact that the wall boards had not been installed. In the Court's view, the facts in the case at bar are more analogous to those in *Tocci Building Corp. v. Zurich American Ins. Co.*, 2009 U.S. Dist. LEXIS 93976 (D. Mass. Sept. 25, 2009). There, where a potion of a wall was damaged, and city inspectors ordered the remainder of the wall replaced because it had not been originally installed according to approved plans, only the damaged portion of the wall was covered by the delay clause. Diamond's claim for coverage under the Delay In Completion Coverage section of the Policy fails.

Finally, Diamond challenges Lexington's interpretation of the definition of the Period of Indemnity. *See* [Doc. No. 12, Ex. A, Definitions (5)]. While the Court is of the opinion that the supplemental soft cost claim is resolved under the Exclusions provision of the Policy, the definition of the period of indemnity and the agreement between the parties, with certainty, establishes the intent of the parties. Diamond recognized in its letter of understanding of October 12, 2009, that the period of indemnity was to end when the Subject Location was put back to its condition immediately prior to the loss. The parties determined that an additional 51 days would be sufficient, barring any additional loss at the site, to place the Subject Location back in its pre-

Hurricane Ike condition. The Court, therefore, is of the opinion that the period of indemnity was extended by 30 days and that period expired pursuant to the parties agreement.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the Court is of the opinion that Lexington's motion for summary judgment should be GRANTED and that Diamond's motion for partial summary judgment should be DENIED.

IT IS SO ORDERED.

SIGNED at Houston, Texas this 20th day of September, 2010.

_____
Kenneth M. Hoyt
United States District Judge